IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:18-CV-00072-D

**Howard Dudley**,

        Plaintiff,

v.

**City of Kinston & A.N. Greene**, in his individual capacity,

        Defendants.

**Order**

Plaintiff Howard Dudley spent nearly 24 years in prison after being convicted of sexually abusing his nine-year-old daughter. Dudley maintained he was innocent of the charges. In March 2016, a North Carolina Superior Court judge vacated his conviction and the district attorney dismissed the charges against him. Dudley then sued Defendants City of Kinston and A.N. Greene, a detective with the Kinston Police Department, for alleged wrongdoing in connection with the investigation that led to his arrest and conviction. Compl., D.E. 1.

As part of discovery, Dudley deposed Johnnye Thomas Waller, who was a social worker at the Lenoir County Department of Social Services and led the investigation into the abuse allegations against Dudley. *See* D.E. 69–2. Since Waller's deposition, Defendants obtained a manual from the North Carolina Division of Health and Human Services that outlines policies in effect at the time of Waller's investigation. Defendants now ask the court for leave to depose Waller a second time so that they can ask her about these policies. Mot. for Leave, D.E. 69.

**I.    Background**

In October 1991, Dudley's nine-year-old daughter Amy told her babysitter that her "'daddy' was 'nasty.'" Compl. ¶31. The babysitter questioned Amy about what she meant, asking

"Did he put his mess inside you?" *Id.* ¶34. Amy said yes, agreed that Dudley had "humped her and had sex with his wife," and claimed "he 'did it on the side.'" *Id.*

Amy lived with her mother, with whom Dudley had a strained relationship, and Dudley and his wife had recently had a second child. *Id.* ¶¶22, 24, 27. Amy was upset that Dudley was spending more time with his newborn son and less time with her. *Id.* ¶28. Dudley was also behind on his child support payments to Amy's mother, and Amy's mother had told Amy that Dudley was not supporting her. *Id.* ¶32.

After Amy told her mother what she had told her babysitter, Amy's mother brought her to the Kinston Police Department. *Id.* ¶¶35–36. Amy told an intake officer that Dudley had "put[] his penis in her anus and vagina" and that it was the second time it had happened. *Id.* ¶37. The intake officer noticed Amy's mother "attempt[ed] to answer questions for Amy" and Amy "did not appear upset or traumatized," and reported these observations to Detective Greene. *Id.* ¶¶36, 38. Greene did not document these facts in the case file. *Id.* ¶38.

Greene's investigation into Amy's allegations against Dudley consisted of a 15-minute interview of Amy, a 10-minute interview of Amy's mother, and a 15-minute joint interview of Amy's babysitter and the babysitter's mother. *Id.* ¶4, 39–42. Greene did not interview Dudley, his wife, or any of Amy's friends or teachers; did not conduct a background investigation into the relationship between Dudley and Amy's mother; and did not investigate trips to a medical clinic that Amy and her mother claimed happened after the alleged assaults. *Id.* ¶44.

Johnnye Waller, a social worker with the Lenoir County Department of Social Services (LCDSS), interviewed Amy, who told conflicting stories about the assaults. *Id.* ¶48. Dudley "adamantly denied Amy's allegations" in an interview with LCDSS and said, "Amy would tell lies to people." *Id.* ¶49. Waller interviewed Amy's elementary school teacher, who told Waller

2

that Amy had made false statements about Dudley before. *Id.* ¶57. Waller also went to the medical clinic referenced by Amy and her mother and discovered Amy never received a vaginal examination or any treatment. *Id.* ¶50. LCDSS ordered a child medical examination of Amy, which found no physical evidence of abuse. *Id.* ¶¶51–52.

LCDSS shared the results of Amy's physical exam with Greene. *Id.* ¶53. Waller also informed Greene of the inconsistencies in Amy's story. *Id.* ¶59. But Greene did not tell the District Attorney about these facts and did not conduct any further investigation. *Id.* ¶¶61, 63. Instead, Dudley found himself arrested for second-degree sexual offense. *Id.* ¶65.

After Dudley's arrest, Amy's guardian ad litem (GAL) interviewed her and reported his conclusions to Greene. *Id.* ¶73. The story that Amy told her GAL differed from what she had told Waller, Greene, and the physicians at the child medical examination. *Id.* ¶¶68–70. The GAL thought Amy seemed "brainwashed" and that her story was "rehearsed." *Id.* ¶71. But Greene did not document the GAL's findings and did no additional investigation. *Id.* ¶¶74–75. The GAL also interviewed Amy's half-brother and Dudley's supervisor, Amy's teacher, and Amy's babysitter, but Greene did not follow up with them. *Id.* ¶¶77–82. The GAL told Waller he believed Amy was "making up the story," and Waller told Greene, but Greene did not investigate further. *Id.* ¶¶90–92.

A grand jury indicted Dudley on charges of first-degree sexual offense, indecent liberties, and lewd and lascivious conduct. *Id.* ¶107. After a jury convicted him of first-degree sexual offense and taking indecent liberties with a child, he received a life sentence. *Id.* ¶118. He served almost 24 years in prison before a North Carolina Superior Court judge vacated his conviction in March 2016 and the district attorney dismissed the charges against him. *Id.* ¶1.

3

Case 4:18-cv-00072-D   Document 73   Filed 04/30/20   Page 3 of 8

Dudley now alleges that Greene caused his incarceration by "deliberate[ly], intentional[ly] and/or reckless[ly] refus[ing]" to investigate Amy's allegations, not following up on "exculpatory and impeachment evidence" gathered by Waller and the GAL, and not providing that evidence to the Lenoir County District Attorney's Office. *Id.* ¶2. Dudley also alleges that the Kinston Police Department did not adequately train its investigators on how to handle child abuse cases. *Id.* ¶¶100–106. Dudley sued the City of Kinston for failing to enact policies or training on child sex abuse allegations and exculpatory evidence. *See generally id.* He also sued Greene for failing to investigate, concealing exculpatory and impeachment evidence, and for violating state law. *See generally id.*

Dudley deposed Waller in May 2019 for less than four hours. Mem. in Supp. of Mot. for Leave at 2, D.E. 69–1. At that deposition, Waller's testimony "was largely limited to her case notes given her lack of any independent memory regarding the Lenoir County DSS' investigation of Plaintiff." *Id.* She "did not have nor did she review statutes or policies that were in effect at the time of her investigation." *Id.* at 3.

At that time, Defendants did not have copies of the rules, regulations, or policies that would have been in effect during the investigation in 1991 and 1992. *Id.* Defendants have since received by subpoena copies of the Family Services Manual effective at the time of the investigation into Dudley. *Id.*

Defendants want to re-depose Waller to ask about the Manual and the policies she would have followed in 1991 and 1992. *Id.* at 5. Dudley does not consent to re-opening Waller's deposition. *Id.* While Waller first appeared willing to attend another deposition, she now opposes being re-deposed. *Id.* at 5–6.

4

## II. Discussion

The Federal Rules require a party to obtain leave of court (or consent from the opposing party) to depose a person for a second time in the same case. Fed. R. Civ. P. 30(a)(2)(A)(ii). The court may allow a party to re-depose a witness only "to the extent consistent with Rule 26(b)(1) and (2)." *Id.* 30(a)(2).

Rule 26(b)(1) requires that a deposition be "relevant to any party's claim or defense and proportional to the needs of the case[.]" *Id.* 26(b)(1). In assessing proportionality, the court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Even if Rule 26(b)(1) supports reopening a deposition, allowing a second deposition must still be consistent with Rule 26(b)(2). That rule allows a court to limit discovery if one of three circumstances is present. First, courts may prohibit a party from resuming a deposition if the information sought would be "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" *Id.* 26(b)(2)(C)(i). Second, reconvening a deposition is inappropriate if "the party seeking [the deposition] has had ample opportunity to obtain the information by discovery in the action[.]" *Id.* 26(b)(2)(C)(ii). And finally, the court should not allow a party to be re-deposed if the information to be obtained "is outside the scope permitted by Rule 26(b)(1)." *Id.* 26(b)(2)(C)(iii).

Defendants seek to re-depose Waller to show her the Family Services Manual and ask if it helps her recall what the policies were that she would have followed in 1991 and 1992. Mem. in Supp. of Mot. for Leave at 5. Dudley opposes re-deposing Waller for three reasons. First, he

contends Defendants could have obtained the Manual before Waller's initial deposition.[1] Resp. in Opp. at 5−7, 8, D.E. 71. Second, he argues that the discovery would be cumulative and duplicative. *Id.* at 7–8. And third, Dudley argues that the burden and expense of re-deposing Waller outweighs its benefit, particularly because of Waller's position as Assistant Superintendent of the Lee County Schools and Director of Student Services and the current public health crisis caused by COVID-19. *Id.* at 8–9. None of these arguments are persuasive.

Dudley begins by arguing that Defendants should not be allowed to reopen Waller's deposition because they could have obtained the Manual before her initial deposition. Dudley contends that the Manual in effect in 1991 and 1992 was publicly available at the time of Waller's first deposition. Defendants disagree and represent that their public records request was based, in part, on their inability to locate the documents. Although Dudley claims that the documents were publicly available, he has not shown the court where they could be found. So the court sides with Defendants on this issue and finds that the documents were not publicly available at the time of the first deposition. *See Martin* v. *Bimbo Foods Bakeries Distribution*, LLC, 313 F.R.D. 1, 5 (E.D.N.C. 2016). ("The party resisting discovery bears the burden of establishing the legitimacy of its objections.").

Dudley is also critical of Defendants' efforts to obtain the Manual both before and after Waller's deposition. Dudley has not shown that Defendants should have known ahead of the deposition (which Dudley, not Defendants noticed) that Waller would be so dependent on documents to refresh her recollection. Once they began their attempts to obtain the Manual, Defendants tried to use North Carolina's public record law to obtain the document before resorting to a federal subpoena. While it would have been more efficient to begin with the subpoena and to

---

[1] Dudley discusses this issue at the outset of his argument section and then raises it again in Subsection B.

6

Case 4:18-cv-00072-D   Document 73   Filed 04/30/20   Page 6 of 8

do so at an earlier time, the court cannot find that Defendants' conduct justifies denying them the ability to obtain deposition testimony on an important aspect of this case. Thus, the court does not find that Defendants unreasonably delayed obtaining the Manual.

Dudley next argues that allowing Defendants to depose Waller would be cumulative and duplicative because she generally described policies that she would have followed in working with the local police department. But while Waller testified about state policies she would have followed, she did not review or discuss the Manual at her deposition. Mem. in Supp. of Mot. for Leave at 3. And Defendants may properly ask Waller about the Manual in an attempt to expose inconsistencies in her prior testimony. *See, e.g.*, *Gutshall* v. *New Prime, Inc.*, 196 F.R.D. 43, 45 (W.D. Va. 2000) (finding evidence discoverable despite the party's intention to only use it for impeachment purposes because impeachment evidence "falls within the broad scope of Rule 26(b)(1)"). Thus, the court finds that the evidence obtained from Waller's second deposition would not be unreasonably cumulative or duplicative.

Dudley's final argument focuses on the burden that would be placed on Waller by requiring her to testify again. Waller is concerned that because of a pre-existing medical condition she is at a higher risk for complications if she were to be infected with the COVID-19 virus, which is present across eastern North Carolina (along with the rest of the world). And she serves in several roles with the Lee County Schools that focus on the well-being of the student population. Waller maintains, understandably, that students are at greater risk and have greater needs during these uncertain times.

The complications created by the public health crisis can be addressed in various ways. To begin with, the parties may wait to take Waller's deposition until later in the discovery period, which currently runs through mid-September 2020. The passage of time may reduce or alleviate

7

the challenges posed by the current public health crisis. But even if the parties need to re-open Waller's deposition in the near term, the parties can take steps to address the concerns Dudley and Waller raised. For example, the parties can take the deposition using videoconference technology or they can conduct it a manner that follows appropriate social distancing procedures (which seems wise at this time regardless of a deponent's pre-existing conditions).

And any concerns about the re-opened deposition interfering with Waller's other obligations can be addressed by counsel working cooperatively to schedule the deposition for a mutually convenient time. What's more, the parties should also conduct the deposition in a manner that allows Waller to monitor and, if need be, address any urgent matters involving student safety.

The court also finds that Rule 26's proportionality factors support reopening Waller's deposition. This case involves serious allegations of wrongful conduct that, if true, caused Dudley to unnecessarily spend over two decades in prison. The amount in controversy is likely to be substantial, as Dudley seeks compensatory and punitive damages for his wrongful conviction. Waller's testimony is important to Dudley's claims, as the complaint alleges Waller played a key role in the investigation that led to Dudley's conviction. And Dudley noticed Waller's prior deposition, but now Defendants seek to re-depose her. The burden of re-deposing Waller does not outweigh the benefit.

### III. Conclusion

For these reasons, the court grants Defendants' motion for leave to take a second deposition of Johnnye Thomas Waller. The parties may depose Waller until the aggregate amount of time spent on the record for her two depositions reaches seven hours.

Dated: April 30, 2020

*Robert T Numbers II*

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE