IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:18-CV-00072-D

**Howard Dudley**,

        Plaintiff,

v.

**City of Kinston & A.N. Greene**, in his individual capacity,

        Defendants.

**Order**

Plaintiff Howard Dudley claims Defendants City of Kinston and A.N. Greene[1], a detective with the Kinston Police Department, mishandled an investigation that led to his conviction on charges of sexually abusing his daughter. Compl., D.E. 1 at 1, 23. The defendants now claim that if they are liable to Dudley, then there are others who must indemnify them or at least contribute to the payment of any verdict. So they ask the court to allow them to file a third-party complaint to add Lenoir County, Johnnye Thomas Waller, Robert Griffin, and Elizabeth Douglas, as third-party defendants. Mot. for Leave to File Third-Party Compl. at 1, D.E. 74. Waller, Griffin, and Douglas are current or former employees of the Lenoir County Department of Social Services. Mem. in Supp. at 3–4, D.E. 74–1.

The original defendants claim that the proposed third-party defendants are liable to them for contribution and indemnification under state and federal law. *Id.* at 6–11. This assertion rests on two contentions by the original defendants. *Id.* at 6–8. First that the proposed third-party defendants failed to produce alleged exculpatory evidence despite a court ordering them to do so.

---

[1] The court will refer to the City of Kinston and Greene as the original defendants.

*Id.* And second, the proposed third-party defendants allegedly failed to act when they learned that Dudley's daughter had recanted her allegations. *Id.* at 8–9.

Dudley disagrees. He contends that the allegations in the third-party complaint are irrelevant to the case. Resp. in Opp. at 1, D.E. 80. Dudley also argues against adding the third-party defendants because, he claims, the claims in the third-party complaint are not based on a theory of derivative liability. *Id.* at 2–6. But even if the court would reject his arguments on these points, Dudley claims that allowing the original defendants to file a third-party complaint would substantially prejudice him. *Id.* at 15–17.

After considering these positions, the court denies[2] the Motion for Leave to File a Third-Party Complaint (D.E. 74). Allowing the original defendants to seek contribution under § 1988 for the alleged civil rights violation would be contrary to the statute's text. And there is no basis to allow indemnification or contribution under North Carolina law. The original defendants are not entitled to indemnification because they have not established that they are passive tortfeasors or that their liability is secondary or derivative. Their attempt to recover under the doctrine of contribution fails as well. They have not shown why North Carolina's common law contribution doctrine applies to tort claims. Similarly their attempt to use North Carolina's statutory contribution doctrine is unpersuasive because the alleged tortious conduct by the proposed third-party defendants occurred after Dudley's conviction and thus is too remote in time to make them joint tortfeasors.

---

[2] Judge Dever referred this matter for disposition under 28 U.S.C. § 636(b)(1)(A). That statute allows a magistrate judge to "hear and determine any pretrial matter" with certain exceptions that are not relevant here. 28 U.S.C. § 636(b)(1)(A). Matters decided under § 636(b)(1)(A) are subject to review under a "clearly erroneous or contrary to law" standard. *Id.*

2

## I. Background

Plaintiff Howard Dudley spent decades in prison after being convicted of sexually abusing Amy Moore, his nine-year-old daughter. Moore's trial testimony helped the State convict her father. Yet Dudley maintained his innocence.

In 2013, Dudley filed a motion for appropriate relief in state court. During a hearing on his motion, Moore recanted her testimony and claimed two other men sexually abused her. Moore's testimony led to a North Carolina judge vacating Dudley's conviction and the district attorney dismissing the charges against him.

Dudley then sued the City of Kinston and A.N. Greene, a detective with the Kinston Police Department in 2018, for alleged wrongdoing during the investigation that led to his arrest and conviction. Compl. ¶ 2. The Complaint contains five claims against the original defendants. Dudley brings two claims against Greene under § 1983 for failing to properly investigate Moore's allegations and for concealing exculpatory and impeachment evidence. *Id.* ¶¶ 119–138. And he also claims that Greene is liable to him under theories of state common law negligence, gross negligence, and recklessness. *Id.* ¶ 180. Dudley claims the City of Kinston violated his rights by failing to enact policies or training regarding child sex abuse allegations and failing to adopt policies or training about handling exculpatory evidence. *Id.* ¶¶ 139–179.

The original defendants now wish to bring state law contribution and indemnification claims along with a contribution claim under federal law against the proposed third-party defendants. Mem. in Supp. at 1.

They claim that there are two bases for this derivative liability. First, the original defendants allege that the proposed third-party defendants were aware of and ignored a January 1992 state court order requiring them to turn over documents to Dudley's attorney. The original

3

defendants claim that the information in the documents is the same exculpatory information allegedly withheld by Greene. *Id.* at 8.

The second alleged basis for the proposed third-party defendants' liability focus on information they learned about Moore recanting her allegations in August 1992. The original defendants claim that Douglas learned about the recantation but did not tell the juvenile court. *Id.* at 9.

With this background in mind, the court turns to its analysis of the motion.

## II.     Analysis

The Federal Rules of Civil Procedure allow a defendant to bring a third-party claim against a nonparty "who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). The third-party defendant's liability must be "derivative of, or secondary to," the original defendant's liability to the original plaintiff. *Watergate Landmark Condo. Unit Owners' Ass'n* v. *Wiss, Janey, Elstner Assocs., Inc.*, 117 F.R.D. 576, 577 (E.D. Va. 1987).

The typical third-party claim will "involve one joint tortfeasor impleading another, an indemnitee impleading an indemnitor, or a secondarily liable party impleading one who is primarily liable." *Id.* at 578. But "a third-party defendant may not be impleaded merely because he may be liable to the *plaintiff.*" *Id.* at 578 (citing *Owen Equip. & Erection Co.* v. *Kroger,* 437 U.S. 365, 368 n.3 (1978) (emphasis in original)). "[A] third party claim is not appropriate where the defendant and putative third party plaintiff says, in effect, 'It was him, not me.'" *Id.* Ultimately, whether to grant a motion seeking to add a third party, "rest[s] within the sound discretion of the trial judge." *Baltimore & O. R. Co.* v. *Saunders*, 159 F.2d 481, 483 (4th Cir. 1947).

The original defendants claim that the proposed third-party defendants are liable to them under theories of indemnification and contribution. "Indemnification, of course, involves shifting

4

the entire loss from one wrongdoer to another; contribution requires each wrongdoer to pay his proportionate—or *pro rata*—share of the adverse judgment." *Baker, Watts & Co.* v. *Miles & Stockbridge*, 876 F.2d 1101, 1103 (4th Cir. 1989). If true, this would be an appropriate basis to add the third-party defendants. So the court will turn to whether the original defendants can maintain indemnity or contribution claims against the proposed third-party defendants.

### A. Importing North Carolina's Common Law Right of Contribution into a Federal Civil Rights Action

The original defendants maintain that they have a right to seek contribution from the proposed third-party defendants for any damages awarded against them for a violation of Dudley's federal constitutional rights. Mem. in Supp. at 11. Although neither 42 U.S.C. § 1983 or § 1988 explicitly allow a wrongdoer to seek contribution, the original defendants claim the court can import North Carolina law on contribution into the federal statute. Dudley argues that there is no basis to allow the original defendants to seek contribution[3] from the third-party defendants for their tortious conduct.

Under 42 U.S.C. § 1983, a plaintiff can hold a defendant liable for a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. And while the statute provides for the liability of a constitutional tortfeasor, it is silent on whether that tortfeasor can seek contribution (or indemnification) from others. *Hepburn ex rel. Hepburn* v. *Athelas Inst., Inc.*, 324 F. Supp. 2d 752, 755–56 (D. Md. 2004).

But the statute's silence is not necessarily the end of the story. If a federal court finds that federal law does not "furnish suitable remedies" for a deprivation of constitutional rights, it may fashion a remedy using state law. 42 U.S.C. § 1988(a) (2018). Adoption of state law to fashion a

---

[3] Dudley also argues that the original defendants have no right to indemnification from the proposed third-party defendants. Resp. in Opp. at 6-7. But the original defendants seek no such thing. Mot. for Leave at 11-12.

5

suitable remedy is permissible so long as the common law "is not inconsistent with the Constitution and laws of the United States[.]" *Id.*

The court begins, as it must, with the text of § 1988(a). The statute permits state common law to "be extended to and govern . . . in the trial and disposition of" a claim under § 1983. 42 U.S.C. § 1988(a).

But the statute provides a few prerequisites that must be satisfied before a federal court can adopt state law in a civil rights action. Section 1988 begins by explaining that the jurisdiction of district courts "shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry" into effect statutes that provide "for the protection of all persons in the United States in their civil rights, and for their vindication[.]" *Id.*

It is only when federal laws "are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law" that a federal court can consider adopting state law. *Id.* There is also the additional requirement that state law cannot be "inconsistent with the Constitution and laws of the United States[.]" *Id.*

The original defendants skip over whether the lack of an explicit right to contribution in §§ 1983 and 1988 means that federal law does not provide a suitable remedy to carry into effect the civil rights laws. This omission is somewhat understandable. There is little case law discussing what the term "suitable remedies" means.

Yet the statute's language sets the boundaries on the ability of a federal court to borrow state law. And that authority only extends to "those facilities available in local state law but unavailable in federal legislation, which will permit the full effectual enforcement of the policy sought to be achieved by the statutes." *Brazier* v. *Cherry*, 293 F.2d 401, 408 (5th Cir. 1961).

6

Section 1988 explains the policy that it seeks to achieve. The statute exists "for the protection of all persons in the United States in their civil rights, and for their vindication[.]" 42 U.S.C. § 1988(a). In other words, it focuses on whether and how a plaintiff can recover for a violation of their civil rights. *See, e.g.*, *Roberts* v. *Wegmann*, 436 U.S. 584, 586–93 (1978) (considering whether under Louisiana law, a civil rights claim survived the plaintiff's death).

Given this understanding of § 1988, it would be inappropriate to incorporate North Carolina's law of contribution into this action. The purpose served by bringing a claim of contribution has nothing to do with protecting or vindicating civil rights. Instead, it focuses on the allocation of damages between those who violated someone's rights. So the court will deny the original defendants' request to bring a third-party claim for contribution under § 1988 against the proposed third-party defendants.

### B.     State Law Indemnification Claim

The original defendants also assert that North Carolina law requires the proposed third-party defendants to indemnify them for any damages they incur under Dudley's negligence, gross negligence, and recklessness claim. The claim of indemnity stems from the assertion that, at worst, they were merely passively negligent tortfeasors, while the proposed third-party defendants were actively negligent.

North Carolina recognizes three kinds of indemnity. An obligation to indemnify another party can arise from an express contract, a contract implied in fact, or under an equitable concept known as a contract implied in law. *Kaleel Builders, Inc.* v. *Ashby*, 161 N.C. App. 34, 38, 587 S.E.2d 470, 474 (2003). There is no claim of any kind of actual contractual relationship between the original defendant and the proposed third-party custodians, so any indemnification obligation must arise from a contract implied-in-law.

7

A party trying to show that they are entitled to indemnification based on a contract implied in law must establish two things. To begin with, the first defendant must show that the second defendant is jointly and severally liable to the plaintiff. *Hunsucker* v. *High Point Bending & Chair Co.*, 237 N.C. 559, 563, 75 S.E.2d 768, 771 (1953). And then the first defendant must show either "(a) one has been passively negligent but is exposed to liability through the active negligence of the other or (b) one alone has done the act which produced the injury but the other is derivatively liable for the negligence of the former." *Edwards* v. *Hamill*, 262 N.C. 528, 531, 128 S.E.2d 151, 153 (1964).

There are also various limitations on the availability of this type of indemnification. First, "[t]he doctrine of primary-secondary liability cannot arise where an original defendant alleges that the one whom he would implead as a third-party defendant is solely liable to plaintiff." *Id.* (citing cases). And second, "[i]ndemnity is not permitted when the defendants are *in pari delicto*, that is, when both defendants breach substantially equal duties owed to the plaintiff." *Kim* v. *Pro. Bus. Brokers Ltd.*, 74 N.C. App. 48, 51, 328 S.E.2d 296, 299 (1985) (citing *Hayes* v. *City of Wilmington*, 243 N.C. 525, 91 S.E.2d 673 (1956)).

The original defendants assert that they are entitled to indemnity because they were passively negligent tortfeasors. Mem. in Supp. at 10. And a review of the allegations against the original defendants and proposed third-party defendants provides no clarity on this issue.

The filings allege that both sets of defendants engaged in tortious conduct that injured Dudley. Greene and the City of Kinston allegedly conducted an inadequate investigation and failed to disclose exculpatory information. The proposed third-party defendants also allegedly failed to disclose exculpatory information. The allegations are that both defendants were actively negligent. And there is no indication that the original defendants' potential liability to Dudley stems from

8

some operation of law, such as vicarious liability. So there is no reason to find that there is a contract implied in law that would justify the proposed third-party defendants indemnifying the original defendants.

### C. Contribution Under North Carolina Law

The original defendants also claim that they are entitled to contribution under North Carolina law from the proposed third-party defendants for any damages awarded for Dudley's negligence, gross negligence, and recklessness claim. North Carolina recognizes two types of contribution, one established by statute and one established by common law. But the original defendants cannot show that they are entitled to contribution under either one.

North Carolina's common law right to contribution, also known as equitable contribution, was limited. Generally speaking a person who must "pay or satisfy the whole or to bear more than his just share of a common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares." *Nebel* v. *Nebel*, 223 N.C. 676, 684–85, 28 S.E.2d 207, 213 (1943). But "equitable contribution has not generally been allowed with respect to joint liability in tort." Charles E. Daye & Mark W. Morris, *North Carolina Law of Torts* § 22.60 n.50 (4th ed. 2012). Instead, it is applicable to "such problems as shared tax liability, rights among devisees, allocating tax burdens among properties, and liability on note." *Id.* (citations omitted). And under common law there was no right to contribution under the common law between joint tortfeasors. *Lineberger* v. *City of Gastonia*, 196 N.C. 445, 450, 146 S.E. 79, 81 (1929).

The original defendants point out that the doctrine of equitable contribution exists in North Carolina, but they have not shown why they would have a right to employ the doctrine in this case.

9

So they have not persuaded the court that it is appropriate to add this claim against the proposed third-party defendants.

In addition to common law contribution, North Carolina provides a statutory right to contribution in its Uniform Contribution Among Tortfeasors Act. The Act provides that "where two or more persons become jointly or severally liable in tort for the same injury to person . . . there is a right of contribution among them even though judgment has not been recovered against all or any of them." N.C. Gen. Stat. § 1B-1(a). But a party may only benefit from this statutory right if the "negligent or wrongful acts are united in time or circumstance such that the two acts constitute one transaction or when two separate acts concur in point of time and place to cause a single injury." *State Farm Mut. Auto. Ins. Co.* v. *Holland*, 324 N.C. 466, 470, 380 S.E.2d 100, 103 (1989).

Dudley argues that the original defendants' actions led to his conviction in April 1992. The original defendants claim that the proposed third-party defendants failed to reveal that Moore recanted her allegations in August 1992. As this occurred after Moore's conviction, it cannot justify a claim of contribution against the proposed third-party defendants.

The original defendants' allegations that the proposed third-party defendants failed to comply with the state court order is more complicated. The original defendants claim that a judge orally ordered Lenoir County DSS to turn over documents in January 1992.[4] Mem. in Supp. at 7. But the judge did not sign the order until May 26, 1992, and the Clerk's office did not file it until May 28, 1992. *Id.* The oral order came before Dudley's conviction, but the signing and entry of the order occurred after. So the question is, which of these orders imposed a legal obligation on Lenoir County DSS to turn over the records?

---

[4] The parties dispute whether the January 1992 hearing occurred. But the court will assume for the purposes of this motion that the hearing occurred and that the judge made an oral ruling consistent with the order ultimately entered.

10

Under North Carolina law, a court's order is only enforceable after it has been entered. *Carland* v. *Branch*, 164 N.C. App. 403, 405, 595 S.E.2d 742, 744 (2004). And although Rule 58 of the North Carolina Rules of Civil Procedure only discusses the entry of judgments, the state's courts have held that the rule applies with equal force to entry of orders. *Abel*s v. *Renfro Corp.*, 126 N.C. App. 800, 803, 486 S.E.2d 735, 737 (1997). So the version of Rule 58 in effect in 1992[5] will resolve when the proposed third-party defendants had a duty to comply with the order.

In 1992, a court could enter an order in one of several ways, two of which are relevant here. At that time, if a judge was granting relief other than entering a judgment for a sum certain after a jury verdict, she could announce the order in open court and then "the clerk shall make a notation in his minutes as the judge may direct and such notation shall constitute the entry of judgment[.]" N.C. R. Civ. P. 58 (1990) (amended 1994); *In re O.D.S.*, 247 N.C. App. 711, 714, 786 S.E.2d 410, 413 (2016) ("Prior to the 1994 amendments, judgments and orders could be entered by the clerk simply making a notation of the orally rendered judgment.").

The original defendants claim that the judge orally ordered Lenoir County DSS to turn over documents in January 1992. But there is no indication that he ordered the clerk to make the necessary notation of the order in the clerk's minutes or that the clerk did so on his own. Without this entry, the order was not considered to have been entered in open court. *Morris* v. *Bailey*, 86 N.C. App. 378, 389, 358 S.E.2d 120, 126 (1987). So Lenoir County DSS was under no legal obligation at that time to turn over the records.

There was yet another way that Rule 58 allowed for entries of a judgment or order. It provided that "entry. . . shall be deemed complete when an order for the entry of judgment is received by the clerk from the judge, the judgment is filed and the clerk mails notice of its filing

---

[5] North Carolina amended Rule 58 "in 1994 to clarify when a judgment or order was entered and therefore enforceable." *Dabbondanza* v. *Hansley*, 249 N.C. App. 18, 21, 791 S.E.2d 116, 119 (2016).

11

to all parties." N.C. R. Civ. P. 58 (1990) (amended 1994). According to the record, the earliest the order about the Lenoir County DSS records could have been entered (and thus taken legal effect) was if it was both filed and served on May 28, 1992. This was a month after Dudley's conviction. So any failure to comply with this order cannot cause the third-party defendants to be considered joint tortfeasors with the original defendants.

There is thus no basis for the original defendants to claim that they are entitled to contribution by the proposed third-party defendants under the Uniform Contribution Among Tortfeasors Act.

### III. Conclusion

For the reasons stated above, the original defendants cannot maintain a claim of indemnity or contribution against the proposed third-party defendants. Thus they have not established that it is appropriate to file their proposed third-party complaint. The motion for leave to file a third-party complaint (D.E. 74) is denied.

Dated: November 23, 2020

_____
Robert T. Numbers, II
United States Magistrate Judge

12

Case 4:18-cv-00072-D   Document 158   Filed 11/23/20   Page 12 of 12