IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:18-CV-00072-D

**Howard Dudley**,

               Plaintiff,

v.

**City of Kinston & A.N. Greene**, in his individual capacity,

               Defendants.

**Order**

      Amy Moore, the daughter of Plaintiff Howard Dudley, appears in many aspects of this case. It was Moore's statements that led a jury to convict her father for sexually assaulting her in 1992. And it was Moore's statements recanting her allegations that led to Dudley's exoneration decades later. Now, Dudley claims that Defendant A.N. Greene's failure to adequately investigate Amy Moore's statements led to his wrongful conviction.

      The defendants' attorneys were interested in getting a statement from Moore too. So they noticed and began to take her deposition. But this first attempt to depose Moore was cut short. After a brief but acrimonious and objection-filled deposition, Moore's Guardian Ad Litem, attorney Josiah Corrigan, terminated the deposition. Corrigan claimed defense counsel was conducting the deposition in bad faith by trying to exploit Moore's cognitive limitations.

      Since then, Moore and the parties have asked the court for various kinds of relief related to her short-lived deposition. Defendants mainly object to Corrigan's behavior during the deposition. They claim he engaged in obstructionist conduct, improperly instructed Moore not to answer questions, and inappropriately terminated the deposition. They ask the court to require Moore to

sit for another deposition and to require Corrigan to pay costs related to their motion and the resumed deposition.

Corrigan and Dudley claim that defense counsel acted inappropriately and was intentionally trying to capitalize on Moore's mental limitations. They ask for a specified set of rules to govern questioning at Moore's deposition. They also ask the court to require the defendants to pay the costs associated with their motions.

## I.     Legal Standard

Several of the Federal Rules of Civil Procedure are involved in these motions. The court will summarize each before delving into the substance of the motions.

The parties and Moore all invoke Rule 30(d) as a basis for their motions. This rule provides that a "deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). Once a motion has been terminated under this rule, "the deposition may be resumed only by order of the court where the action is pending." *Id.* 30(d)(3)(B).

Dudley and Moore also direct the court to Rule 26(c). Under that rule, the court may issue a protective order to restrict or modify the discovery process. Fed. R. Civ. P. 26(c). The party seeking a protective order must show that there is "good cause" for the court to issue the order. *Id.* 26(c)(1).

Besides Rule 26(c), Dudley also relies on Rule 30(b)(4). This rule allows "a deposition be taken by telephone or other remote means" either by court order or stipulation of the parties. *Id.* 30(b)(4).

2

## II. Analysis

Testimony offered at a deposition differs from testimony offered at trial. The former category is part of an information gathering exercise to help the parties understand their case and prepare for trial. The latter category is part of the presentation of evidence to the finder of fact that will decide which party prevails in the litigation.

Given the differing purposes of these two exercises, the rules of evidence apply differently at each stage. At trial, evidence must both be relevant and comply with the Federal Rules of Evidence to be admissible. Fed. R. Evid. 402. But in the discovery context, information need not be admissible to be discoverable. In fact, the Federal Rules of Civil Procedure explicitly provide for the discovery of inadmissible evidence. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

And the process for handling potentially inadmissible material differs between discovery and trial. At trial, a judge must resolve any disputes over the admissibility of evidence before it gets before the factfinder. Fed. R. Evid. 104. But because judges are not typically available to address evidentiary issues that arise at a deposition, there are different rules for making and resolving objections to questions or testimony. During a deposition, any objections "must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." *Id.* 30(c)(2). Attorneys are to make objections "concisely in a nonargumentative and nonsuggestive manner." *Id.* These rules prevent a deposition from being "unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond." *Id.* 1993 Advisory Committee Notes.

The Federal Rules of Civil Procedure provide more guidance related to objections at depositions. A party may object "at a hearing or trial to the admission of any deposition testimony

that would be inadmissible if the witness were present and testifying." Fed. R. Civ. P. 32(b). And a party does not waive an objection "to the deponent's competence . . . or to the competence, relevance, or materiality of testimony" if they do not make it at the deposition, unless the party taking the deposition could have corrected the error during the deposition. *Id.* 32(d)(3)(A). But a failure to make a timely objection to "the form of a question or answer" does lead to a waiver. *Id.* 32(d)(3)(B)(i). Given these protections on the ability to raise an objection to deposition testimony later, objections "ordinarily should be limited to those that under Rule 32(d)(3) might be waived if not made at that time[.]" *Id.* 30(d) 1993 Advisory Committee Notes. Otherwise, objections "should be kept to a minimum during a deposition." *Id.*

There are, however, a small set of circumstances where it is appropriate for a deponent not to answer a question. First, a person may instruct a deponent not to answer if the instruction is "necessary to preserve a privilege[.]" *Id.* 30(c)(2). Second, a person may prevent a witness from answering a question if it is necessary, "to enforce a limitation ordered by the court[.]" *Id.* And third a person may instruct a deponent to refrain from answering a question so that the attorney can ask the court to terminate or limit the deposition. *Id.* Such a motion is appropriate only if the deposition "is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." *Id.* 30(d)(3)(A). The party making the motion bears the burden of showing that they are entitled to relief. *Coach, Inc.* v. *Hubert Keller, Inc.*, 911 F. Supp. 2d 1303, 1310 (S.D. Ga. 2012) (quoting *Rivera* v. *Berg Elec. Corp.*, No. 2:08–cv–01176, 2010 WL 3002000, at *2 (D. Nev. July 28, 2010)).

With these rules in mind, the court turns to the issues raised in the pending motions.

### A. Impact of Moore's Mental Limitations on Her Deposition

Corrigan and Dudley accuse defense counsel of trying to exploit Moore's mental limitations. They note that a 2013 psychiatric and psychological examination found that Moore was intellectually disabled, had "a full-scale IQ of 68," and was "extremely suggestable." Corrected Dudley Mot. Ex. B at 19, 22–23, D.E. 89–2; Am. Moore Mot. at 1–2, D.E. 114. They also note that a forensic psychiatrist found Moore would change "her responses frequently when told her original responses were incorrect (even if they were accurate originally)." Corrected Dudley Mot. Ex. B at 33; Am. Moore Mot. at 2, Ex. C at 33. The forensic psychologist also observed that Moore "would make up new information on memory tasks when she did not remember certain details." *Id.* Moore also lives with several mental health problems and takes medications to address them. Am. Moore Mot. at 3. Corrigan claims that "[i]n the context of a deposition," her mental and intellectual issues "are most problematical." *Id.*

Corrigan and Dudley claim that defense counsel tried to use these issues to her advantage during Moore's deposition in different ways. The court will address each argument separately.

#### 1. General Conduct of the Deposition

The court has reviewed the transcript and the video of Moore's deposition. There was nothing inappropriate about defense counsel's demeanor. The tone and substance of her questions were professional and appropriate for a court-related proceeding. There were no examples of bad faith conduct such as "maintaining a persistently hostile demeanor, employing uncivil insults, and using profuse vulgarity." *GMAC Bank* v. *HTFC Corp.*, 248 F.R.D. 182, 186 (E.D. Pa. 2008). And the topics that defense counsel asked about did not stray beyond the scope of relevancy in the discovery context. *See Stone* v. *Trump*, 453 F. Supp. 3d 758, 766 (D. Md. 2020) (explaining that during discovery information is relevant if it "relate[s] to a claim or defense" in the case); *Mach.*

5

*Sols., Inc.* v. *Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018) ("A discovery request is relevant 'if there is any possibility that the information sought might be relevant to the subject matter of [the] action.'").

The court is also unpersuaded by the argument that Moore could not withstand questioning by defense counsel. To begin with, Moore has testified about these events repeatedly over the course of three decades in several court proceedings. There is no indication that attorneys in those proceedings were subject to the types of restrictions sought here.

And both the transcript and the video show that Moore can actively participate in her deposition. Although there was a moment of confusion at the outset, overall Moore appeared to understand and be able to answer defense counsel's questions. When Moore did not understand a question, she asked for clarification. She was not afraid to speak at length about the events at issue when she wanted to do so. Moore Dep. at 51:6–53:3, D.E. 114–5. When defense counsel questioned whether Moore needed a break to address drowsiness, Moore said she could proceed. *Id.* at 86:15–87:2.

Whatever her mental limitations may be, the court is unconvinced that Moore is so susceptible to suggestion that she cannot be questioned like any other deponent. There is no indication that any of her answers stemmed from manipulation or improper suggestion by defense counsel. If Moore gives answers that Dudley's attorneys think are incorrect or misleading, they can ask Moore about them after defense counsel has concluded her examination.

### 2. Defense Counsel Appearing at Moore's Deposition in Person

Dudley claims that defense counsel violated an agreement about who would attend Moore's deposition in person. He argues that defense counsel had agreed to "conduct Amy Moore's deposition via videoconference" as set out in Moore's deposition notice. Corrected

Dudley Mot. at 2. Dudley maintains that before Moore's deposition, the parties agreed that "[a]ll of the lawyers would participate remotely via zoom through Veritext Court Reporting service." *Id.* He asserts that defense counsel's decision to appear in person "was an intentional attempt by defendants to take advantage of a mentally disabled witness." *Id.* at 5. Dudley advances several arguments to support this assertion.

First, he tries to bolster his claim of intentional misconduct by pointing out that in February 2000, before a hearing on Dudley's Motion for Appropriate Relief, the Kinston Police Department sent a detective to question Moore. *Id.* How this incident, which occurred over 20 years ago and did not involve defense counsel, establishes that defense counsel was acting in bad faith by attending a deposition in person is unclear.

Second, Dudley claims that defense counsel's request for Moore's address to enable them to serve her with the deposition notice shows they were acting in bad faith. Given her role here, Dudley should have already disclosed Moore's address in his Rule 26(a) disclosures. Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring disclosure of "the name and, if known, the address and telephone number of each individual likely to have discoverable information[.]"). Since defense counsel was entitled to this information, requesting it cannot constitute acting in bad faith.

Third, Dudley argues that it was improper to require Moore to appear for her deposition at her attorney's office rather than conduct the deposition from her aunt's house. Corrected Dudley Mot. at 5. While Moore may have felt more comfortable at her aunt's home, requiring a deponent to appear for a deposition at an attorney's office, particularly when the attorney represents the deponent, is proper.

Finally, Dudley argues that defense counsel showing up at Moore's deposition with "two large binders of documents" revealed an intent to "harass and intimidate her." *Id.* Dudley claims

7

that "there was no legitimate purpose for confronting her with these documents[.]" *Id.* This case has a long documentary record and stretches back over twenty years in time. That a party would use documents as part of an examination of a person so involved in this case can hardly be a surprise.

Dudley's attempts to establish ill-intent on the part of defense counsel are unconvincing. And there is no evidence in the record to support the assertion that defense counsel violated an agreement between the parties. Dudley claims that language in Moore's deposition notice supports this argument. But they failed to provide the court with the deposition notice for an August 2020 deposition. Instead, they included a deposition notice and subpoena for a deposition of Moore that was supposed to occur in October 2019. But even if there had been such an agreement, the appropriate action would be to seek a protective order before the deposition to enforce the stipulation, not wait until after the deposition has occurred.

Given the current public health crisis, it is understandable that Dudley's attorneys do not want to attend depositions in person. And it is appropriate for defense counsel to agree to this type of accommodation. *See White* v. *Vance County*, No. 5:19-CV-00467-BO, 2020 WL 6335958 (E.D.N.C. Oct. 23, 2020). But the decision by attorneys for one party to attend a deposition remotely does not compel other attorneys to do so too. The court will not, at this point, bar attorneys from attending depositions in person.

### 3. Attempt to Exclude Dudley from the Deposition Room

Corrigan claims that defense counsel's attempt to exclude Dudley from Moore's deposition shows she was acting in bad faith. Am. Moore Mot. at 3–4. He claims that defense counsel "knew from the psychological records" that not having Dudley in the room "would make Amy far more anxious and feeling vulnerable to authority figures like lawyers." *Id.* at 3.

8

Whatever "the psychological records" contain, nothing in the evidentiary record supports this allegation. Neither Corrigan, nor Dudley have submitted documentation supporting the claim that Dudley's absence would somehow impact Moore. *Id.* There is a similar lack of support for the claim that defense counsel made this request for a nefarious reason.

And excluding someone who is not being deposed from a deposition is not unheard of.[1] In fact, the Rules of Civil Procedure explicitly allow courts to do just that. *See* Fed. R. Civ. P. 26(c)(1)(E) (authorizing courts to issue a protective order "designating the persons who may be present while the discovery is conducted[.]"). Defense counsel's request to exclude Dudley from the deposition room does not provide the court with grounds to find that she acted in bad faith.

### 4. Leading Questions

Corrigan also complains that defense counsel asked Moore leading questions. As noted above, the fact that a deposition question is objectionable or that the information obtained would not be admissible are issues for trial, not for discovery. So this argument begins on shaky footing.

But even if the rules of evidence controlled at a deposition, they would not prevent defense counsel from asking Moore leading questions. Rule 611 of the Federal Rules of Evidence allows a party to ask leading questions on direct examination "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c)(2). That Moore is Dudley's daughter places her firmly within the category of a witness identified with an adverse party. *Vanemmerik* v. *The Ground Round, Inc.*, No. 97–5923, 1998 WL 474106 (E.D. Pa. July 16, 1998) ("The normal sense of a person 'identified with an adverse party' has come to mean, in general, an employee, agent, friend, or relative of an adverse party."). There was nothing inappropriate about defense counsel asking Moore leading questions.

---

[1] The court expresses no opinion about whether excluding Dudley from the deposition room would be appropriate.

9

### 5. Allegations of Bad Faith Questioning

Corrigan then challenges a series of questions that he claims were part of an attempt "to get Amy to say her testimony was a part of a plan to get money for her father." Am. Moore Mot. at 4. Even if the court were to accept this characterization as true, it would not support a finding of bad faith. There is nothing inappropriate about questioning witnesses about their motivations and possible biases. If defense counsel could establish that Moore's "testimony was a part of a plan to get money for her father[,]" that would be a legitimate ground for the jury to consider in weighing Moore's credibility.

The argument that the questions were so repetitive as to constitute harassment or abuse of the witness fares no better. Corrigan objects to a series of questions that involved Moore's understanding of the lawsuit, its claims, and the damages Dudley seeks. The court has reviewed this portion of the deposition and finds no basis to conclude that defense counsel undertook this questioning in bad faith.

The examples offered to support this argument occurred early in Moore's ill-fated deposition. The allegedly offending questions begin with defense counsel asking Moore, "And do you know what this lawsuit is about?" Moore Dep. at 22:8–9. Moore responds, "No, not really." *Id.* at 22:10. Defense counsel then proceeds to ask Moore, "Do you understand your dad is suing the City of Kinston?" Moore responds that she "didn't know he was suing the City of Kinston." *Id.* at 22:21–22. Moore's response to that question appears in the midst of two transcript pages of back and forth between the attorneys and court reporter about technical issues. *Id.* at 22:15–24:11. So the court can hardly fault defense counsel for asking the question again after resolving the technical issues. *Id.* at 24:13–15. But this time, the question led Moore to ask whether she was being sued and who represented her. *Id.* at 24:16–25:2. Thus, posing the question to Moore a third

10

time after answering her questions was appropriate. *Id.* at 25:4–5. And Moore then answered that she was aware, based on what an attorney told her, that Dudley was suing the City of Kinston. *Id.* at 25:6–9.

Defense counsel then moved on to a related, but different question. She asked Moore, "And do you understand that your dad is seeking money damages, he wants money from the City of Kinston . . . as part of this lawsuit?" *Id.* 25:12–17 (objection omitted). Moore said she did not. *Id.* at 25:18–21.

After questioning Moore about Dudley's claim against the City of Kinston, defense counsel moved on to Dudley's claims against Greene. Defense counsel asked Moore if she knew he was suing Greene and seeking "money damages" from him. *Id.* at 26:12–27:4. She said she did not. *Id.* at 27:4.

But Moore then asked defense counsel a question. She said, "May I ask, what kind of damages?" *Id.* at 27:6–7. In response, defense counsel asked Moore if she knew Dudley was seeking to have the City of Kinston and Officer Green "pay him money . . . [a]s a result of his being convicted for sexually abusing you back in 1991[.]" *Id.* at 27:9–14.

The deposition then moved on to focus on conversations Moore may have had with Dudley. Questioning revealed that Dudley and Moore had met with an attorney the week before her deposition. *Id.* at 29:18–30:5. Defense counsel asked, "your dad told you about going to see the lawyer?" *Id.* at 30:6–7. To which Moore responded, "That he was going to get some money." *Id.* at 30:9–10. Given that Moore's answer was not responsive to the question, it is understandable that defense counsel followed up by asking, "So your dad said that you were going to go see the lawyer in order to help him get some money?" *Id.* at 30:12–14. Moore responded that he had. *Id.* at 30:15. As defense counsel explored Moore's conversation with Dudley, Moore claimed Dudley

11

told her that "he wanted me to help him keep some money for the time he served in prison." *Id.* at 31:3–4. Soon after, defense counsel asked, "And you understand being here today might help him get some money; is that right?" *Id.* at 31:8–9.

When read in context, there is nothing repetitive or inappropriate about these questions. Defense counsel asked if Moore knew that Dudley was suing and seeking damages from the City of Kinston. She then asked a similar set of questions about Greene. Defense counsel mentioned the damages issue again in response to a question from Moore. And the questions about Moore's testimony helping Dudley recover damages were appropriate given Moore's answers. The claim, both at the deposition and in the filings, that defense counsel engaged in inappropriate, repetitive questioning is baseless.

### 6. Use of Documents to Refresh Recollection

Next, there is a dispute about whether defense counsel improperly tried to use documents to sway Moore's testimony. According to Corrigan, after Moore said she could not recall a particular event, defense counsel inappropriately "attempted to show Amy official documents other people had written decades ago and ask her if she had in fact made the specific statements reflected in those documents." Am. Moore Mot. at 5–6. Dudley's attorneys also objected that "by showing her something you are leading the witness." Moore Dep. at 77:11–12. These objections appears to stem from the assertion that defense counsel had not asked the appropriate predicate questions before trying to use a document to refresh Moore's recollection.

The Fourth Circuit allows counsel to present a witness with a document to refresh the witness's recollection. *United States* v. *Morlang*, 531 F.2d 183, 190–91 (4th Cir. 1975). Under circuit precedent, the only explicitly stated prerequisite for using a document to refresh the witness's recollection is "that the witness' recollection be exhausted." *Id.* Otherwise, "[t]he matter

12

of refreshing a witness' recollection and the manner used are largely within the discretion of the Trial Judge." *United States* v. *Cranson*, 453 F.2d 123, 124 (4th Cir. 1971). Courts often also expect counsel to establish that the document she proposes to show the witness would refresh the witness's recollection. *See, e.g.*, *Hall* v. *Am. Bakeries Co.*, 873 F.2d 1133, 1136 (8th Cir. 1989). But this is not always the case. 28 Fed. Prac. & Proc. Evid. § 6184 (2d ed.). So while not leading the witnesses, failing to proceed through this series of questions could constitute a failure to lay a proper foundation. *United States* v. *Rydland*, 461 F. App'x. 208 (4th Cir. 2012) (finding a lack of proper foundation to use a document to refresh a witness's recollection because the witness did not testify that her memory was exhausted).

So unless defense counsel lays a proper foundation, Moore's deposition testimony on these topics may not be admissible later in this case. And a brief objection to defense counsel's failure to lay a proper foundation would be sufficient since that omission can be remedied by asking another question. But there is no basis for Corrigan to prevent defense counsel from showing Moore documents before questioning her. Similarly, there is no basis for the other attorneys in the case to stop defense counsel from doing so. The court finds that defense counsel was not acting in bad faith when trying to show Moore documents during the deposition.

### B. Instructions Not to Answer & Termination of Deposition

Defense counsel claims that Corrigan improperly instructed Moore to not answer questions on several occasions. As noted above, it is inappropriate to instruct a deponent to not answer a question at a deposition unless the instruction is necessary to protect a privilege, enforce a court-ordered limitation, or to bring a motion to limit or terminate the deposition. Fed R. Civ. P. 30(c)(2).

These questions led Corrigan to instruct Moore not to answer:

13

- "And you understand being here today might help [Dudley] get some money; is that right?" Moore Dep. at 31:8–9.
- "Okay. How about the -- do you remember the social worker who talked to you when you were a child or the social workers who talked to you when you were a child about whether or not Howard Dudley had sexually abused you? Do you remember them?" *Id.* at 34:11–15.
- "Do you mind telling me why you stopped the services?" *Id.* at 43:21–22.
- "So it is your understanding that your brother's family don't want to be with you anymore?" *Id.* at 47:11–12.
- "And I can represent to you, Amy, that this is a record from the Kinston Police department of an interview." *Id.* at 78:18–20.
- "My question is: Do you remember telling that story?" *Id.* at 89:18–19.
- "Amy, I'm going to just ask you to look at Exhibit 134 and let me know if Exhibit 134 refreshes your memory about what you may have said to the Kinston Police Department officers or what they said --" *Id.* at 101:19–23.
- "I'm going to ask, Amy, if you would take a look at 79 and see if 79 refreshes your recollection at all about a conversation or conversations you had with Paul Porter." Tr. at 105:8–11.

None of these questions have anything to do with privileged matters as far as the court can tell. And as the court had entered no limitations on discovery, Corrigan's instructions were unnecessary to enforce court-ordered limitations. Nor did Corrigan give the instruction not to answer so he could present a motion to limit or terminate the deposition. Corrigan's decision to terminate the deposition came after an allegation that defense counsel was being "inappropriate

14

and manipulative." *Id.* at 107:19. Corrigan's instructions to Moore to refrain from answering questions were inappropriate.

### C. Speaking Objections

It is improper for an attorney to make speaking objections during a deposition. Instead, objections "must be stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). Corrigan did not comply with this rule. Instead, the deposition transcript is littered with speaking objections and other improper commentary from Corrigan:

- Early on in the deposition, in response to a question about whether Moore wants Dudley to be present at the deposition, Corrigan says, "If you can answer that question the way she's asked it then go ahead and answer it, okay?" Moore Dep. at 18:16–18.

- When defense counsel questioned Moore about the damages Dudley sought in this lawsuit, Corrigan interjected, "Don't -- don't answer that question. That's directly leading, it's putting words into her mouth." *Id.* at 31:11–13.

- When asking about Moore's relationship with her family, Corrigan said, "Leading nature. She never said that she didn't want to be around her. She said that she doesn't have constant contact with her." *Id.* at 49:12–15.

- During questioning about Moore's prior testimony, Corrigan said, "Remember her question to you is: Do you remember testifying? You already said that you don't remember testifying." *Id.* at 63:14–16.

- As the questioning about Moore's prior testimony continued, Corrigan again said, "Well, objection, she can't remember that because that's not testimony, that's a summation of the findings. If you remember you can answer her question." *Id.* at 64:8–12.

15

- As defense counsel tried to ask about when she first remembered that someone other than her father assaulted her, Corrigan said, "You -- but you need to ask -- she's not aware what's in her medical records so she's not qualified to talk about that." *Id.* at 76:5–7.

All of these comments, and others like them in the transcript, are improper. Going forward, all counsel must object in the manner provided in the federal rules.

### D. Award of Fees and Costs

Corrigan and the parties ask the court to award them the fees and costs the incurred in connection with these motions. Rule 37(a)(5) governs whether the court should grant this request. That rule applies by its own terms to Defendants' motion to compel, Fed. R. Civ. P. 37(a)(5), and it applies by reference to the motions to terminate or limit Moore's deposition, *id.* 30(d)(3)(C).

Since the court granted Defendants' motion and denied Dudley and Moore's motions, the court, after hearing from Dudley and Moore, "must" require them, or their attorneys, to pay Defendants "reasonable expenses incurred" in connection with the motions, "including attorney's fees." *Id.* 37(a)(5)(A), 37(a)(5)(B). The only exception to these rules are if the moving party "filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;" the offending party's actions were "substantially justified;" or "other circumstances make an award of expenses unjust." *Id.* 37(a)(5)(A), 37(a)(5)(B). The court will schedule a hearing to consider whether any of these exceptions apply.

### E. Request for a Special Master to Preside Over Deposition

Dudley's counsel has asked that the court appoint a special master to preside over the rest of the deposition. The court does not believe that such an appointment is necessary at this point. This order should provide enough direction and incentive to successfully complete the deposition.

16

And in case it does not, the court advises the parties that more violations will lead to the imposition of sanctions.

### III. Conclusion

For the reasons stated above, Defendants' Motion to Compel Deposition Testimony (D.E. 83) is granted. Dudley's First Motion for Protective Order and Limit Deposition (D.E. 87) and Amended Motion for Protective Order to Limit Deposition (D.E. 114) are denied. Dudley's Corrected Motion for Protective Order to Limit Deposition (D.E. 89) is also denied.

The court orders that:

1. Defendants may resume Moore's deposition at a mutually agreeable date and time. If the parties and Corrigan are unable to cooperatively select a date and time to resume the deposition, they are to contact the undersigned's case manager and the court will select a date and time.
2. Given the futility of the earlier deposition, Defendants may depose Moore for up to another 7 hours on the record.
3. Unless counsel for the parties and any non-party deponents agree otherwise, these provisions will apply to the logistics of depositions going forward:
    a. No later than 7 days before a deposition, each attorney attending a deposition will inform the other attorneys involved in the deposition of whether they plan to attend remotely or in person and, if remotely, whether by video or phone.
    b. Counsel may attend the deposition in person or by remote means, no matter how another attorney chooses to attend.

c. If more than one attorney will attend the deposition for a party, counsel for that party must designate one of the attendees as lead counsel who will defend or question the witness.

d. Counsel for all parties are to have equal access to the location at which the witness will be attending the depositions.

e. The court expects the parties to honor their commitment unless there is good cause for a change in plans. Attorneys must promptly notify all other attorneys involved in a deposition if they are changing their method of attendance. If a dispute arises over whether an attorney can change their method of attendance, they should contact the undersigned's case manager before the deposition begins and the court will resolve the issue.

4. Defense counsel may ask Moore leading questions during her deposition.

5. Counsel may show Moore documents during the deposition without prior approval of any other attorney. Counsel may question Moore about the documents without interference from any other attorney beyond making appropriate objections or giving a permissible instruction not to answer a question.

6. Counsel must limit objections to those that are subject to waiver under Rule 32(d)(3)(B). Counsel must state objections concisely, in a nonargumentative and nonsuggestive manner. Moore is to answer the question once an attorney makes an objection unless counsel instructs Moore not to answer.

7. If an attorney instructs Moore not to answer, they must concisely state the basis for the instruction on the record.

18

8. Moore's counsel is not to comment on the record about questions posed to Moore unless he is making a concise objection or giving a permissible instruction not to answer a question. This prohibition includes "cautioning" Moore, Moore Dep. at 108:3–5, summarizing or rephrasing a question, *id.* at 106:20–21, suggesting an answer to a question, *id.* at 24:19–25:1, commenting on documentary evidence, *id.* at 59:8–11, suggesting a question is appropriate, *id.* at 48:22–23, stating (beyond making a concise objection) that a question is inappropriate, *id.* at 48:1–3, or making speaking objections.

9. The parties should notify the undersigned's case manager of the date and time of Moore's deposition. If an attorney believes that it is necessary to present a motion to the court under Rule 30(d)(3), they should pause the deposition and contact the undersigned's case manager to arrange for a remote hearing.

10. Rule 30(d)(2) allows the court to "impose an appropriate sanction. . .on a person who impedes, delays, or frustrates the fair examination of the deponent." The court may impose a sanction of at least $1,000 on a party or attorney who, without substantial justification:

    a. Engages in conduct that requires the court to set the date or time of Moore's deposition;

    b. Engages in conduct that requires the court to determine the appropriate manner for one or more attorneys to attend a deposition;

    c. Brings an unsuccessful Rule 30(d)(3) motion during Moore's deposition;

    d. Engages in conduct that results in the court granting a Rule 30(d)(3) motion related to Moore's deposition; or

    e. Engages in any other conduct brought to the court's attention that impedes, delays, or frustrates the fair examination of Moore.

11. In addition, if a party or attorney materially violates the terms of this order, the court will consider it to be a failure to obey a discovery order under Rule 37(b). The court will impose sanctions as provided under Rule 37(b)(2) up to dismissal of the action. Violation of this order may also lead to the initiation of contempt proceedings or referral to this court's attorney disciplinary process.

Dated: December 1, 2020

_____
Robert T. Numbers, II
United States Magistrate Judge

20

Case 4:18-cv-00072-D   Document 164   Filed 12/01/20   Page 20 of 20